MICHAEL DeVITA, appellant,

*v.*

MICHAEL LOPRETE et al., respondent.

[Argued December 7th, 1909. Decided September 16th, 1910.]

1. A stipulation of a contract awarding to a person the right to collect and remove the garbage of a city for a specified sum that no assignment of the contract or any part thereof shall be made without the consent of the city first obtained tends to discourage collusion among probable bidders, and to prevent extortionate contracts from being forced on the city; and equity will not deprive a municipality of the protection of such a stipulation by compelling the performance of a prior contract between such person and others for the carrying on of the contract as a partnership.

2. Where a person has entered into two independent contracts with different persons, each valid and enforceable, equity will not compel him to violate provisions of one of the contracts to the injury of the other party thereto for the purpose of affording relief under the other contract.

On appeal from an order advised by Vice-Chancellor Leaming, whose opinion is reported in *75 N. J. Eq. (5 Buch.) 421.*

*Messrs. Riker & Riker,* for the appellant.

*Mr. Franklin W. Fort,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

This is an appeal from an order in chancery sustaining a demurrer to a bill of complaint. The bill is based upon an agreement made between the complainant on the one part, and the defendant and one Demetrio Loprete on the other, in June, 1903, by which it was provided that if either or any of the parties should at any time before August 1st, 1906, be awarded by the city of East Orange a contract for the removal and disposal of garbage within the limits of that city, the successful party would admit the others to a full one-third share of the profits of such contract; and, further, that "the partnership" thereby constituted would purchase from Michael Loprete, and that he would sell to the partnership, any or all stock, horses, wagons, or other property owned by him which might be necessary for the purpose of performing the municipal contract, such property to be purchased at a fair price to be determined upon by the parties, or, in the event of a disagreement between them, at a price fixed by appraisers. The bill alleges that the defendant, Michael Loprete, in June, 1906, was awarded a five-year contract by the city of East Orange, by the terms of which, for the sum of $67,000, he was required to collect and remove all ashes, garbage and other refuse matter which should be conveniently placed for removal in receptacles in front of any building or premises on any and all of the streets or other public

highways of that city. It is then alleged in the bill that the defendant Michael Loprete, after obtaining this contract with the city, refused to sell his stock, horses and wagons to the partnership, in accordance with his agreement with the complainant and Demetrio Loprete, and refused to admit them to a share of the profits made by him under the contract with the city. The bill then prays that an account may be taken of the profits received by the defendant Michael Loprete, and that the portion thereof to which the complainant is entitled may be determined; that the defendant may be compelled to exhibit to the complainant all his books of account, checks and other papers, showing his dealings and transactions under the East Orange contract, and that a receiver be appointed to receive, hold and distribute the profits arising from the business. A copy of the contract with the municipality is annexed to the bill and made a part thereof by proper recitals.

We concur in the conclusion reached by the learned vice-chancellor that the demurrer to the bill should be sustained. We prefer, however, to rest our judgment upon a ground not adverted to in the opinion delivered by him, although, by so doing, we are not to be understood as dissenting from the views therein expressed.

The contract between the defendant and the city of East Orange contains, among others, the following provision:

"No transfer or assignment of this contract, or any part thereof, or of any money due or to grow due thereon, shall be made, without the consent of the city council of East Orange first obtained and expressed by resolution of the said city council; and should any such transfer or assignment be made the city council of East Orange shall have the right at its option, by resolution, to terminate this contract."

One of the purposes of this provision is, manifestly, to prevent a collusive arrangement between parties who might otherwise be bidders on the contract, by which the city would be deprived of the benefit of competition between them, and one of their number enabled (perhaps) to obtain an award of the contract at an exorbitant figure. The importance of such provisions in municipal contracts is great; they are absolutely necessary for the protection of municipalities against extortion. The effect of

DeVita *v.* Loprete.    77 *Eq.*

granting to the complainant the relief sought by his bill would be to deprive the city of East Orange of the benefit of this provision of its contract, for it is not suggested in the bill that it has consented to any transfer or assignment by Michael Loprete to the complainant of any interest in the contract, or of any money due or to grow due under it. It may be thought that the city received all the benefit which could come to it from the provision when the bidding on the contract was closed, and the contract itself was awarded, and that, therefore, it cannot be harmed by enforcing the rights of the complainant against the defendant under the agreement between them; but a moment's consideration will show that this is not so, for the provision would be no protection at all to the city if it could be violated as soon as the contract was signed. It is its enforcement which tends to discourage collusion among probable bidders, and prevents extortionate contracts from being forced upon the municipality.

Where a person has entered into two independent contracts with different parties, each equally valid and enforceable against him, a court of equity will never compel him to violate material provisions of one of them, to the injury of the other party thereto, for the purpose of affording relief under the other. This being the situation disclosed upon the face of the present bill, it is clearly demurrable for want of equity.

The order appealed from will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON—14.

*For reversal*—None.