ATLANTIC CITY, DEFENDANT IN CERTIORARI, v. WIL-
LIAM M. ABBOTT, PROSECUTOR.

Argued November 9, 1905—Decided February 26, 1906.

A city ordinance which limits the use of the public streets for the
collection and disposition of offal, garbage or refuse matter that
may become dangerous to the public health, to the duly authorized
contractor of the city, is valid as an exercise of police power, if
passed in good faith to safeguard the public health.

On *certiorari.*

Before Justices DIXON, GARRISON and SWAYZE.

For Atlantic City, *Harry Wootton.*

For the prosecutor, *Bourgeois & Sooy.*

The opinion of the court was delivered by

SWAYZE, J.  The prosecutor was convicted of the violation
of an ordinance of Atlantic City which prohibited anyone ex-
cept the duly authorized contractor of Atlantic City from
using the streets for the purpose of collecting or disposition of
offal, garbage or refuse matter that might become dangerous
to the public health.  The ordinance contained regulations as
to the time of removal of garbage, and its conveyance to the
disposal plant of the contractor, or such other place within
the city limits as might be designated by the sanitary com-
mittee; it prescribed the character of the conveyance to be
used, and provided that no garbage should be spilled or left
on the ground; that the conveyances should not be filled
above a certain level, and should be kept covered, cleansed
and disinfected, so that they might not become dangerous to
the public health.

The prosecutor was not the duly authorized contractor of

the city, and the evidence justified his conviction of a violation of the ordinance.

The city is authorized, by section 14 of the act of 1902 (*Pamph. L., p.* 284), to provide for the collection and disposition of offal, garbage, wastes and all refuse matter which may become dangerous to the public health. The ordinance in question is clearly an attempt to exercise this power, and the question discussed at the argument and in the briefs is whether it is a reasonable exercise of power in view of the provisions of our state and federal constitutions. It is said to be unreasonable because it limits the right of removal to the duly authorized contractor and the place of disposition to the city limits, and to be in violation of the constitution because it deprives the owner of the garbage of his property without compensation.

The disposition of garbage is a matter of prime importance to the public health, and justifies careful inspection and regulation on the part of the public authorities in order to secure its prompt removal and disposition, at seasonable hours, and under such conditions that the danger of scattering offensive matter in the streets may be reduced to a minimum. These objects can be more readily secured if the matter is under the exclusive control of the city. The time and frequency of collection, the method of conveyance, and the method and place of final disposition of the refuse, are all important, and proper control can only be secured by close and careful inspection, which becomes more and more difficult as the number of places and persons to be watched increases. It is not sufficient that the method of collecting and carting should be harmless and involve no menace to health by the use of the streets; it is necessary, also, that the refuse should be finally disposed of in such a way that the public authorities may be assured that it will be innocuous. To accomplish that purpose they may adopt any reasonable plan of disposition, provided they act in good faith for the protection of the public health, and not in an arbitrary manner.

We see no reason in the present case to doubt that the ordinance was passed in good faith, and, although it creates

an exclusive right, we cannot say that this is not the result of an attempt to safeguard the public health by means which are reasonable, and bear a real and substantial relation to the end to be accomplished—the final disposition of the refuse matter.

In *Nicoulin* v. *Lowery,* 20 *Vroom* 391, the charge was that the defendant in the night time carted, carried and took into and within the limits of the township a load of night soil. It was said that the complaint, although it used the words of the ordinance, was defective in not charging facts to show an offence within the spirit and meaning of the law; but all that the case really decided was that the defendant ought to have taken an appeal to the Court of Common Pleas, and that for his failure to do so the *certiorari* ought to be dismissed. The remark that the ordinance would be held unreasonable if its penalties were sought to be enforced against anyone making a use of the public streets which was harmless in fact was *obiter,* and was accompanied by the statement that it might be adjudged reasonable when applied to another state of facts, citing *Pennsylvania Railroad Co.* v. *Jersey City,* 18 *Vroom* 286.

In the present case the defendant was in the employ of one Steelman, who resided at Bargaintown, and raised hogs. The inference is, and it is so said in the prosecutor's brief, that he was collecting garbage and conveying it to Bargaintown to feed his hogs. In view of the importance to public health of a populous city like Atlantic City attending to the final disposition of garbage, we think this ordinance cannot be held unreasonable for limiting the final disposition to the territorial limits of the municipality, at least as applied to the state of facts presented by the case.

It is argued, further, that the ordinance takes private property without compensation because it deprives the owners of the garbage of the privilege of selling it and the purchasers of the privilege of using it. The defendant is neither owner nor purchaser, but only an employe of the purchaser. Whether he is in a position to raise this objection need not be consid-

ered, since we think the ordinance is not objectionable as taking private property without compensation.

In *City of Passaic* v. *Paterson Bill Posting Co.*, 42 *Vroom* 75, Mr. Justice Van Syckel said: "The true rule to be extracted from the cases, and the one abundantly supported by them, is that when statutes are obviously intended to provide for the public safety and the ordinances prescribed under them are reasonable and in compliance with their purposes, both the statutes and the ordinances are lawful, and must be given due effect." This statement of the law was approved by the Court of Errors and Appeals. 43 *Vroom* 285.

We have already stated our reasons for holding the regulation now in question reasonably necessary.

This view is supported by the authorities. *Weller* v. *Snover*, 13 *Vroom* 341; *Shivers* v. *Newton*, 16 *Id.* 469, and *Newark and South Orange Horse Car Railway Co.* v. *Hunt*, 21 *Id.* 308, are cases in which the taking of private property was sustained as an exercise of the police power.

More immediately in point are two cases decided since the argument of the present case by the Supreme Court of the United States—California Reduction Co. *v.* Sanitary Reduction Works of San Francisco, November 27th, 1905, and Gardner *v.* Michigan, November 27th, 1905.

In the first case the city ordinance gave the contractor an exclusive right to cremate the garbage and required that it should be delivered at the crematory at the expense of the person conveying it.

In the second case the court considered the validity of an ordinance of Detroit very similar to the ordinance of Atlantic City now in question.

In both cases the ordinances were sustained as a valid exercise of the police power.

The conviction should be affirmed, with costs.