(No. 43120.—)

SOLOMON KIPPERMAN, Appellant, *vs.* THE CITY OF MARK-HAM *et al.*, Appellees.

*Opinion filed December 4, 1970.*

RAYSON, HUTCHISON & KIPPERMAN, of Tinley Park, for appellant.

MOORE, COLEMAN & STONE, of Midlothian, (ROBERT L. COLEMAN, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The basic issue in this case is the validity of the following addition to the municipal code of the City of Markham, adopted March 21, 1968:

"Section 21—106—A. Number of Licenses. The number of Real Estate Broker Licenses that may be issued by the City of Markham, Illinois, shall be determined on a popula-

tion basis, as follows: There shall be one (1) Real Estate Broker's License issued for each 1,000 inhabitants residing in the City of Markham, said population to be determined on the basis of the last preceding Federal Census, or, the last preceding Special Federal Census."

A special Federal census taken in 1964 reported Markham's population to be 14,595. In November of 1969, after 14 licenses had previously been issued, the plaintiff, Solomon Kipperman, doing business as Kipp's Real Estate, applied for a real estate broker's license. His application was denied on the ground that all available licenses had been issued. He then filed this action in the circuit court of Cook County, against the city and three of its officials, seeking a declaration of the invalidity of the ordinance, an injunction against its enforcement, and alternatively, a writ of *mandamus* to compel the issuance of a license to him. An answer was filed, evidence was heard, and at the close of the plaintiff's evidence there was a finding for the defendants, and the court ordered the suit dismissed. Constitutional issues are involved, and the plaintiff has appealed directly to this court.

The plaintiff contends that section 21—106—A is void because the city lacks statutory authority to limit the number of real estate brokers, and because the licensing ordinance purporting to do so violates the due process and equal protection clauses of the fourteenth amendment to the United States constitution and the due process clause of the Illinois constitution.

The facts are not disputed. Prior to the challenged addition to the municipal code, the City of Markham had licensed more than 80 real estate brokers. The plaintiff was licensed by the State of Illinois as a real estate broker on January 8, 1969. He had previously been employed as an authorized real estate salesman by a broker licensed by the City of Markham. After he received his license from the State, he opened his own real estate broker's office in Skokie, Illinois, under the assumed name of Kipp's Real Estate. His

application for a broker's license was accompanied by the requisite fees, but it was rejected on the ground that has been stated.

The authority of the city to license real estate brokers is found in section 11—42—1 of the Municipal Code, which provides: "The corporate authorities of each municipality may license, tax, and regulate auctioneers, private detectives, money changers, bankers, brokers, barbers, * * *." (Ill. Rev. Stat. 1967, ch. 24, par. 11—42—1.) The statute grants no express power to limit the number of real estate brokers or the number of those engaged in any of the other occupations named in section 11—42—1.

The only factual justification for the limitation upon the number of real estate brokers' licenses that has been suggested appears in the testimony of Albert Wardingley, the city manager of the City of Markham. He testified that the challenged ordinance was passed "because of excessive complaints by citizens who moved into town—due to unscrupulous brokers selling them a house—windows were out—light fixtures were missing—sinks were missing and there were ninety-two vacant homes." The relation between these conditions and the number of real estate brokers licensed by the municipality is not apparent, and in any event the ordinance places no limitation upon the number of salesmen that a licensed broker may hire to work for him within the municipality.

The defendant, however, points to two decisions of this court which sustained municipal restrictions on the number of licenses issued. Those decisions are *Strub* v. *Village of Deerfield* (1960), 19 Ill.2d 401, which held that the municipality could limit to two the number of persons licensed to conduct scavenger operations, and *Yellow Cab Co.* v. *City of Chicago* (1947), 396 Ill. 388, which held that the city was authorized to limit the number of taxicab licenses issued. In neither of these cases, however, did the action taken by the municipality rest solely upon the power to "license,

tax, and regulate." The scavenger case was held to involve matters so directly and intimately related to the public health as to justify the granting of an exclusive license, and like the taxicab case it involved the use of the public streets for private gain. (See *City of Chicago* v. *Vokes* (1963), 28 Ill.2d 475, 479.) Neither of these decisioins supports the limitation imposed in this case.

A subsidiary question concerns the fees charged for a real estate broker's license. In September of 1967, an ordinance was adopted by the city which increased the annual license fee for a real estate broker's license from $30 to $100, and also required that an initial application be accompanied by a fee of $250. The plaintiff contends that these fees are arbitrary and unreasonable because they bear no reasonable relation to the costs incurred in the regulation of real estate brokers, and that they therefore violate his constitutional rights to due process and equal protection of the laws. We find it unnecessary to set forth the evidence as to the cost of regulation, for the statutory grant of authority to the municipality includes the power to tax, and under such an authorization nonprohibitive license fees may be imposed both for regulation and for revenue. *Village of Itasca* v. *Luehring* (1954), 4 Ill.2d 426; *Metropolis Theater Co.* v. *City of Chicago* (1910), 246 Ill. 20, affd. 228 U.S. 61, 57 L. Ed. 730, 33 S. Ct. 441; *City of Carrollton* v. *Bazzette* (1896), 159 Ill. 284.

The judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*